UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

GREGORY R. MULAC,
    Plaintiff,

v.                                            Case No. 5:20-cv-244-KKM-PRL

BILLY WOODS, HEART OF FLORIDA,
FNU VELEZ, FNU WOOTEN, and
OCALA COMMUNITY CARE,
    Defendants.
_____

**O R D E R**

    In an amended complaint (Doc. 40), Plaintiff Gregory R. Mulac sues Billy Woods, Sheriff of Marion County (individual and official capacity); Heart of Florida Health Center, Inc. (HFHC) (official capacity); Vilmarie Velez, M.D., Marion County Jail (individual and official capacity); Teresa Wooten, Nurse Practitioner, Marion County Jail (individual and official capacity); and Ocala Community Care, Inc. (official capacity). Mulac alleges he was denied adequate medical care while confined at Marion County Jail. He brings claims for Eighth Amendment deliberate indifference under 42 U.S.C. § 1983 as well as state law claim of medical negligence. (*Id.* at 4.) The Defendants move to dismiss the amended complaint, (Docs. 41, 42, 44), and Mulac opposes the motions, (Doc. 47). Having

considered the motions and the response, the Court grants the motions and dismisses the complaint.

## I. FACTUAL BACKGROUND

Mulac alleges that, beginning in June 2019 and lasting for several months, while incarcerated at the Marion County Jail, he had a serious medical need concerning his left eye, and that today he suffers from decreased visual acuity of the left eye and scaring. (Doc. 40 at 10-11.) Mulac's left eye became inflamed and he was in pain. (*Id.* at 14.) Defendant Velez, a physician, then misdiagnosed him after an eye injury. (*Id.* at 12.) Defendant Velez repeatedly housed Mulac in the infirmary in isolation and treated him for conjunctivitis. (*Id.* at 12, 14, 16.) As a result, Mulac suffered for months. (*Id.* at 14.) Defendant Wooten, a nurse practitioner, examined Mulac's left eye, treated it as an irritation, and provided inadequate care with improper medication. (*Id.* at 13, 16.) Defendant Billy Woods, as the Sheriff, was in charge of the welfare of the inmate population of the jail. (*Id.* at 7.) Defendants Ocala Community Care and HFHC were responsible for administering medical services at the jail. (*Id.* at 7.)

For relief, Mulac seeks monetary damages, prescription medication, medical examination and treatment, and equipment to aid him with his visual disabilities. (*Id.* at 17.) He also seeks declaratory relief. (*Id.*) Mulac was incarcerated at the Marion County Jail when

he initiated this case, then confined in the Florida Department of Corrections at various institutions, and is presently no longer confined, (Docs. 1, 7, 13, 32, 34, 50.)

"The general rule in our circuit is that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief." *Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007) (citations omitted) (abrogated on other grounds). Mulac is no longer confined in the Marion County Jail; therefore, his claim for declaratory relief is moot. To the extent that his amended complaint could be construed as one seeking injunctive relief, it no longer presents a case or controversy since Mulac was transferred from the jail. *Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988) (a claim for injunctive relief no longer presents a case or controversy once the inmate is transferred to a different facility). Relatedly, Ocala Community Care is no longer the contracted health care provider for the jail. (Doc. 42 at 1-2.) As such, Ocala Community Care can no longer provide the requested injunctive relief. *See KH Outdoor, L.L.C. v. Clay Cnty., Fla.*, 482 F.3d 1299, 1302 (11th Cir. 2007) (the doctrine of mootness provides standing must exist throughout the litigation).

II. ANALYSIS

A. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-

3

unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp.*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Bell Atl. Corp.*, 550 U.S. at 557).

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570). A claim is plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although the court must afford a pro se litigant wide leeway in pleadings, a pro se litigant is "not relieved of his obligation to allege sufficient facts to support a cognizable legal claim," and "to survive a motion to dismiss, a Plaintiff must do more than merely label his claims." *Johnson v. Schwarze*, No. 8:15-cv-2850-JDW-TGW, 2017 WL 2303981, at *1 (M.D. Fla. May 25, 2017) (citation omitted).

4

The Court first addresses whether Mulac has established a claim for relief under § 1983, because if not, the Court should not address Mulac's state law claims. *See Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004) (noting district courts are encouraged to dismiss remaining state law claims when the federal claims have been dismissed prior to trial). As such, the Court proceeds to address whether Mulac has adequately alleged a deprivation of his constitutional rights based on deliberate indifference to his serious medical needs.

### B. Consideration of Extrinsic Evidence

Generally, a court should not consider extrinsic evidence when ruling on a motion to dismiss unless a document "is central to the plaintiff's claim" and incorporated by reference in the complaint. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997) ("[T]he analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto."). Rule 12 provides, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *See* Fed. R. Civ. P. 12(d). *See also Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002) ("Whenever a judge considers matters outside the pleadings in a 12(b)(6) motion, that motion is thereby converted into a Rule 56 Summary Judgment motion."). However, the Eleventh Circuit has held a court may consider extrinsic evidence when ruling on a 12(b)(6)

motion if a document "is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). As such, when a plaintiff, in his complaint, incorporates by reference a document that is central to his claim, and the opposing party does not contest the authenticity of the document, a court may consider it when ruling on a motion to dismiss. *Id.*

Here, Mulac submits documents in support of his amended complaint. (Doc. 40 at 25-26.) Defendants do not question the authenticity of the documents that Mulac offers. Accordingly, the Court will consider them, to the extent relevant and central to Mulac's claim, in ruling on the motions.

### C. Deliberate Indifference

To establish deliberate indifference to a serious medical need a plaintiff must show: (1) that there was an objectively serious medical need; (2) subjectively, that the defendant was deliberately indifferent to that need; and (3) causation between that indifference and the plaintiff's injury. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). For the subjective component, a plaintiff must show that the defendant was deliberately indifferent because he (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with "more than gross negligence." *Patel v. Lanier Cnty. Ga.*, 969 F.3d 1173,

1188 (11th Cir. 2020) (quoting *Harper v. Lawrence Cnty*, 592 F.3d 1227, 1234 (11th Cir. 2010)).

The "deliberate indifference standard is 'a difficult burden for a plaintiff to meet[.]'" *West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir. 2007) (quoting *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990)). Simply put, "mere misdiagnosis or subpar care, even if it rises to the level of medical malpractice, does not constitute deliberate indifference." *Simmons v. Fla. Dep't of Corr.*, No. 5:14-CV-438-BJD-PRL, 2015 WL 3454274, at *10 (M.D. Fla. May 29, 2015). Further, "whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)).

Taking the allegations in the amended complaint as true and construing them in the light most favorable to Mulac, he fails to state a claim for medical deliberate indifference. He contends Defendant Velez and Wooten examined his eye and treated him for conjunctivitis when he had a tear and infection and should have seen a specialist. Although he incorporates the words "deliberate indifference" and alleges "gross negligence" and claims even a lay person could recognize the necessity for a doctor's attention, his factual allegations sound in negligence. Mulac alleges that Defendant Wooten examined Mulac's left eye and

7

treated it. (Doc. 40 at 13-14.) Mulac alleges Defendant Velez repeatedly housed Mulac in the infirmary in isolation, treating him for conjunctivitis. (*Id.* at 12, 14, 16.) Thus, Mulac's own allegations show that he was examined, provided medication, repeatedly housed in an infirmary, and treated for several months.

Mulac submits that he should have been seen by an outside optometrist instead of being treated for conjunctivitis or eye irritation and isolated in the infirmary. (*Id.* at 11-12, 14.) On February 24, 2020, Dr. Shalesh Kaushal discovered Mulac had a severe tear in his left eye and a bacterial infection.[1] (*Id.* at 15.) Dr. Kaushal treated the condition with medication. (*Id.*)

Of note, once Mulac was confined in the Florida Department of Corrections, he received a provisional diagnosis of decreased visual acuity, and a consultation request was made for optometry. (*Id.* at 25.) Mulac reported to the optometrist that he had recurrent conjunctivitis in 2019, and the optometrist found Mulac's pupils to be normal with the scar from the infection not to be in Mulac's visual axis, and then updated Mulac's prescription and with correction Mulac exhibited 20/20 vision. (*Id.* at 26.)

Mulac was examined, evaluated, and treated by medical providers at the jail and repeatedly housed in the jail's infirmary. (Doc. 40 at 12-14.) In the amended complaint, Mulac fails to allege facts that make it plausible that any of the Defendants knew of his risk

---

[1] Mulac does not identify the type of infection; however, conjunctivitis may be bacterial.

of serious medical need and disregarded it through conduct that constituted something more than gross negligence. Defendants Wooten and Velez examined and treated Mulac, albeit not in the manner Mulac thinks they should have, refuting any argument that the Defendants purposely denied treatment in a deliberately indifferent manner. At most, Mulac's allegations present a dispute over the medical staff's medical judgment and adequacy of the medical attention provided. Mulac has not alleged that the Defendants knew Mulac had suffered a tear in his eye but refused to obtain the necessary medical treatment nor has he alleged facts showing Defendants had subjective knowledge that Mulac had suffered a tear or had subjective intent to punish Mulac. At most, Mulac's factual allegations show the medical staff diagnosed Mulac with conjunctivitis or some infection and treated him according, which might have been a misdiagnosis or even a failure to fully diagnose that Mulac had suffered a tear along with some sort of bacterial infection. While Mulac's factual allegations may state a claim of negligence or medical malpractice, they do not rise to the level of a constitutional violation. *See Estelle*, 429 U.S. at 106 ("Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.") (footnote omitted).

In his Response, Mulac contends there were major gaps between points of treatment, resulting in the worsening of the infection. (Doc. 47 at 2.) Again, Mulac is complaining about the adequacy and frequency of treatment, a matter which sounds in tort law, not

constitutional law. At most, the alleged gaps in treatment amount to mistakes or negligence; "accidents, mistakes, negligence, and medical malpractice are not 'constitutional violation[s] merely because the victim is a prisoner.'" *Harris v. Coweta Cnty.*, 21 F.3d 388, 393 (11th Cir. 1994) (quoting *Estelle*, 429 U.S. at 106).

In his amended complaint, Mulac also alleges that he should have been referred to an outside specialist, an optometrist, at an earlier date. (Doc. 40 at 11-12.) Whether an additional form of treatment is indicated "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. The medical decision to treat an infection and isolate the patient is, at most, medical malpractice. Whether a defendant should have employed additional diagnostic techniques, alternative forms of treatment, or referred a patient to a specialist for such is a matter of medical judgment, and therefore not the appropriate basis for § 1983 liability. *See Adams*, 61 F.3d at 1545. Although an optometrist may have come to a different conclusion as to the proper course of treatment, a simple difference in medical opinion as to the diagnosis and recommended treatment amounts to a matter of difference in medical opinion, not a federal constitutional violation. *See Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citation omitted). The medical staff of the jail did not disregard Mulac's medical condition as they assessed his condition, prescribed medication, and repeatedly placed him in an infirmary to address his medical needs.

10

Defendant Woods moves to dismiss Mulac's amended complaint on the basis that Mulac merely raises a state law medical malpractice claim and as the sheriff, Defendant Woods is not a medical professional and had nothing to do with the alleged misdiagnosis of Mulac's medical problem. (Doc. 41 at 1-2.) He contends as a supervisory official he is entitled to rely on the medical judgments made by medical professionals. (*Id.* at 4-5.)

To the extent Mulac seeks to assert a constitutional claim against Defendant Woods because of his supervisory role as the sheriff, he fails to state a claim in the amended complaint. Supervisory liability is available in a § 1983 action only if a plaintiff can show "that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1047-48 (11th Cir. 2014). The causal connection can be established by means of a history of widespread abuse, when a supervisor's custom or policy resulted in deliberate indifference, or facts supporting an inference that supervisor directed or knew that the subordinates would act unlawfully. *Id.* at 1048. Because there is no underlying constitutional violation, any supervisory liability claim against Woods must fail. Additionally, Mulac's amended complaint does not allege facts that make it plausible that Woods was either personally involved or caused a constitutional violation through one of the above means.

11

Defendants HFHC and Velez, Wooten, and Ocala Community Care move to dismiss the amended complaint noting that, while Mulac characterizes his claim as one of deliberate indifference to a serious medical need, his actual claim clearly sounds in medical negligence. (Doc. 42 at 1; Doc. 44 at 4-5.) This Court agrees, finding Mulac may state a claim of negligence or medical malpractice, but he does not present a claim of constitutional dimension. Indeed, his amended complaint of subpar diagnosis and treatment is insufficient to support a claim of deliberate indifference. Based on his allegations, Mulac merely disagrees or is dissatisfied with the treatment he received at the jail.

### D. State Law Claims

Supplemental jurisdiction under 28 U.S.C. § 1367 supplies the only remaining basis for jurisdiction over the state law claims based on medical malpractice or negligence. "The dismissal of [a plaintiff's] underlying federal question claim does not deprive the [c]ourt of supplemental jurisdiction over the remaining state law claims." *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997). "Indeed, under 28 U.S.C. § 1367(c), the Court has the discretion to decline to exercise supplemental jurisdiction over non-diverse state law claims, where the [c]ourt has dismissed all claims over which it had original jurisdiction, but [the court] is not required to dismiss the case." *Id.* But the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney*, 370 F.3d at 1089.

The medical malpractice claims depend on determinations of state law. "[S]tate courts, not federal courts, should be the final arbiters of state law." *Ingram v. Sch. Bd. of Miami–Dade Cnty.*, 167 F. App'x 107, 108 (11th Cir. 2006) (quoting *Baggett*, 117 F.3d at 1353). The Court finds that principles of judicial economy and comity weigh in favor of the Court declining to exercise supplemental jurisdiction over these claims; therefore, a determination of whether Mulac states a claim for relief under state law is unnecessary.

Defendants Woods and HFHC contend that Mulac may not maintain this action for medical negligence in the absence of compliance with the pre-suit requirements set forth in Chapter 766, Florida Statutes (§§ 766.201-206) and Chapter 768, Florida Statutes (§ 768.28), (Doc. 41 at 5-6; Doc. 42 at 3-4.) The Court declines to exercise supplemental jurisdiction over the medical malpractice or negligence claims.

## III. CONCLUSION

The Court concludes Mulac's amended complaint fails to state a claim of deliberate indifference to a serious medical need. Because this is the second attempt, those claims are dismissed with prejudice. The Court also declines to accept supplemental jurisdiction over any pendent state law claims. Those claims are dismissed without prejudice.

Accordingly, it is **ORDERED** as follows:

1. The motions to dismiss (Docs. 41, 42, 44) are **GRANTED** as stated above.

2. The amended complaint is **DISMISSED.**

13

3. The **Clerk** shall enter judgment in favor of Defendants as described above, terminate any pending motions, and close the case.

**ORDERED** in Ocala, Florida, on January 19, 2023.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge

14